UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

PATRICIA MARIE STENBERG,

Plaintiff,

Case No. 1:16-cv-01399-AC

**OPINION AND ORDER**

COMMISSIONER,
Social Security Administration

Defendant.

**ACOSTA**, Magistrate Judge:

Patricia Stenberg ("plaintiff") seeks judicial review of the final decision of the Commissioner of the

Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits

("DIB") and Supplemental Security Income ("SSI"). Because the Commissioner's decision is not

supported by substantial evidence, her decision is REVERSED and REMANDED for further proceedings.

\ \ \ \ \

Page 1 - OPINION AND ORDER

## Procedural Background

Plaintiff filed her application for DIB and SSI on November 29, 2012, alleging disability beginning October 30, 2012. (Tr. 186.) She subsequently amended her alleged onset date to January 17, 2013, coinciding with her fiftieth birthday. (Tr. 21.) The Commissioner denied her application initially and upon reconsideration. (Tr. 94–95, 128–29.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and an administrative hearing was held on November 7, 2014. (Tr. 16–17, 37–63.) After the hearing, the ALJ issued a decision finding plaintiff not disabled dated January 5, 2015. (Tr. 21–31.) The Appeals Council denied plaintiff's subsequent request for review on May 5, 2016, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–6.) Plaintiff filed this appeal arguing the ALJ erred by: (1) improperly evaluating plaintiff's fibromyalgia at step three; (2) improperly crafting plaintiff's residual functional capacity ("RFC") by rejecting the opinions of her treating physicians and improperly evaluating her fibromyalgia; and (3) failing to pose a hypothetical to the vocational expert ("VE") that accounted for all of plaintiff's limitations.

## Factual Background

Born in January, 1963, plaintiff was 50 years old at the time of the administrative hearing. (Tr. 42–43, 64.) She earned a general equivalency diploma ("GED") and worked previously as a desk clerk, motel general manager, and short order cook. (Tr. 92, 225, 245.) Plaintiff alleges disability due to scoliosis, arthritis, fibromyalgia, depression, and autoimmune deficiency. (Tr. 64.)

## Standard of Review

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501

(9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, she is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment, she is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either individually or in combination, meet or equal "one of a number of listed impairments that the [Commissioner]

Page 3 - OPINION AND ORDER

acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, she is presumptively disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant can perform past relevant work, she is not disabled; if she cannot, the burden shifts to the Commissioner.

At step five, the Commissioner must establish the claimant can perform other work existing in significant numbers in the national or local economy. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(g), 416.920(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

### *The ALJ's Findings*

The ALJ performed the sequential analysis, as noted above. At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since her amended alleged onset date. (Tr. 23.) At step two, the ALJ concluded plaintiff had the severe impairments of osteoarthritis, obesity, fibromyalgia, depression, and post-traumatic stress disorder ("PTSD"). (*Id.*) At step three, the ALJ determined plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Tr. 24.)

The ALJ determined plaintiff had the RFC to perform "light work" as defined by 20 C.F.R. §§ 404.1567(b), 416.967(b), but with the following limitations:

> [She is] limited to tasks that involve no more than frequent stooping, climbing, crawling, crouching, or kneeling. She can perform simple, repetitive, routine tasks that require no more than occasional interaction with supervisors, co-workers, or the general public.

(Tr. 25–26.) At step four, the ALJ found plaintiff was unable to perform her past relevant work. (Tr. 29.) At step five, considering the plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that a significant number of jobs in the national and local economy existed such that plaintiff could sustain employment despite her impairments. (Tr. 30.)

## *Discussion*

### I. Fibromyalgia Evaluation at Step Three.

Plaintiff argues this case must be remanded because the ALJ did not properly consider plaintiff's fibromyalgia under Social Security Ruling 12-2p ("SSR 12-2p") at step three. Pl.'s. Br. 09–10 (ECF No. 15) ("Pl.'s Br."); *see* SSR 12-2p, *available at* 2012 WL 3104869 (July 25, 2012). At step three, the ALJ determines whether a claimant's impairment or combination of impairments meets or equals the criteria for a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. Where an impairment does so, it is *per se* disabling and the ALJ has no discretion in awarding benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d); *Young v. Sullivan,* 911 F.2d 180, 183 (9th Cir. 1990). However, an alleged diagnosis of fibromyalgia itself cannot meet the listing requirements because fibromyalgia is not a listed impairment. *Britton v. Colvin*, 787 F. 3d 1011, 1012 (9th Cir. 2015); SSR 12-2p 2012 *available at* WL 3017612, at *6 ("[Fibromyalgia] cannot meet a listing in appendix 1 because [fibromyalgia] is not a listed impairment."). In other words, the analysis of a claimant's fibromyalgia symptoms at step three focuses on whether a claimant's fibromyalgia symptoms medically equals a listing. *Id.*

To demonstrate that an impairment medically equals a listing, the claimant must show the impairment meets all of the medical criteria in that listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.*

Page 5 - OPINION AND ORDER

"[To] equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999) (quoting 20 C.F.R. § 404.1526(a)). Unless a claimant presents evidence in an effort to establish equivalence, an ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005); *see also Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001).

SSR 12-2p establishes guidelines for evaluating fibromyalgia in disability claims. However, as the ruling explains, the inquiry at step three remains examining whether the effects of the claimant's fibromyalgia, either individually or in combination with a claimants other impairments, "medically equals a listing." SSR 12-2p *available at* 2012 WL 3104869, at *6. Here, the ALJ found plaintiff's fibromyalgia severe at step two, and there is nothing in SSR 12-2p that required the ALJ to discuss SSR 12-2p in determining whether plaintiff's fibromyalgia medically equaled a listing at step three. *See* SSR 12-2p *available at* 2012 WL 3104869; *see also Wells v. Colvin*, No. 5:14-cv-05503-PSG, 2016 WL 1070665, at *6 (N.D.Cal. Mar. 18, 2016) (finding no error when the ALJ did not mention SSR 12-2p at step three because it had no bearing on the ALJ's step three determination). Moreover, plaintiff does not specify which listings she believes she meets; nor does she direct the court to any evidence which would support the diagnosis and findings of a listed impairment.[1] *Burch*, 400 F.3d at 683 ("An ALJ is not required to discuss the combined

---

[1] In plaintiff's briefing, she quotes language from SSR 12-2p, which lists "inflammatory arthritis" as an example of the type of listing fibromyalgia could medically equal. Pl.'s. Br. 9. Liberally interpreting plaintiff's quotation of SSR 12-2p as an argument that plaintiff met the medical equivalency of "inflammatory arthritis," plaintiff fails to address the standards for meeting that listing, nor does she cite to any evidence in the record that would support a finding that she met that listing. *See Burch*, 400 F.3d at 683; *see also Lewis*, 236 F.3d at 514 (because the claimant did not offer any "theory, plausible or otherwise," as to how his impairments combined to equal a listed impairment an ALJ's failure to consider equivalence was not

effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence."). The ALJ, therefore, properly found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listing.

## II. RFC Determination.

Plaintiff next argues the ALJ erred in creating an RFC that was not supported by substantial evidence. The RFC indicates an individual's highest level of performance, despite her physical or mental impairments. 20 C.F.R. §§ 404.1545, 416.945. In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence." *Id.*; SSR 96-8p, *available at* 1996 WL 374184 (July 2, 1996). First, plaintiff argues the ALJ failed to properly weigh the medical opinion evidence. Pl.'s. Br. 9. Second, plaintiff argues the ALJ failed to properly consider her fibromyalgia in determining her RFC. Pl.'s Br. 12. The Court addresses each argument in turn.

### A. Medical Opinion Evidence.

Plaintiff argues the ALJ erred by improperly weighing the medical opinions of treating physician Richard Julyan M.D., and treating rheumatologist David Dryland, M.D. Pl.'s Br. 9–11. An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995)). An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that

_____

reversible error).

are supported by substantial evidence." *Id.* In weighing medical opinion evidence, an ALJ considers length of the treating relationship, nature and extent of the treatment relationship, supportability, consistency, and, if relevant, specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c).

### 1. Treating Physician Richard Julyan M.D.

Dr. Julyan issued a medical opinion in June 2014 in the form of a residual functional capacity questionnaire. (Tr. 618–19.) In that questionnaire, Dr. Julyan opined plaintiff would need to take unscheduled breaks hourly, of at least twenty minutes, during an eight hour workday. (*Id.*) Dr. Julyan opined that plaintiff had the following physical limitations, she: (1) could sit for a maximum one hour during an eight hour workday, and could sit for a maximum of ten minutes at any one time; (2) was precluded from jobs that would require her to stand or walk, and could not stand or walk for longer than zero minutes at any one time; (3) could lift less than ten pounds occasionally; (4) required jobs which permit shifting positions at will; and (5) had fingering limitations for fifty percent of an eight hour workday. (*Id.*)

Here, although the ALJ did not explicitly state the amount of weight he gave to Dr. Julyan's opinion, because the ALJ in reconciling the conflicting medical opinions concluded "the record as a whole supports a restriction to light work," the ALJ implicitly rejected Dr. Julyan's opinion. Thus, the ALJ was required to provide "specific and legitimate reasons that are supported by substantial evidence" for doing so. *Bayliss*, 427 F.3d at 1216.

The Commissioner cites two reasons for discrediting Dr. Julyan's opinion. First, the Commissioner argues Dr. Julyan's opinion was inconsistent with contemporaneous treatment notes, citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Def.'s Br. 8 (ECF No. 17) ("Def.'s Br."). The ALJ's decision found that Dr. Julyan's May 2014 treatment note "provid[ed] no objective basis for his

conclusion" that plaintiff was limited in sitting, standing, and walking during an eight hour work day. (Tr. 28.) The ALJ also noted plaintiff appeared "well" and in "no apparent distress" at a May 2014 appointment. (*Id.*)

Read in the context of the medical record the ALJ's reasoning fails to constitute "specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216. It is unsurprising the May 2014 treatment note failed to include objective medical findings regarding plaintiff's sitting, standing, and walking limitations because, as her treating physician, Dr. Julyan was treating plaintiff for an unrelated infection. (Tr. 530–31.) Indeed, Dr. Julyan's treatment notes when read in their entirety support his conclusion that plaintiff had limitations in her ability to sit, stand, and walk. For example, Dr. Julyan diagnosed plaintiff with psoriatic arthritis and noted she had a walking "limitation." (Tr. 473–74.) Moreover, Dr. Julyan referred plaintiff to specialists for both her fibromyalgia and osteoarthritis, and those specialist made objective findings that support Dr. Julyan's conclusions. (Tr. 460, 465.) For example, in early May 2014, family nurse practitioner ("FNP") Richard Lotz noted a finding of "severe pain over the medial and lateral jointline, as well as over the medial subpatellar area bilaterally," and noted plaintiff's "right [knee was] much worse than [her] left." (Tr. 460–01.) He subsequently prescribed plaintiff cortisone treatment. (*Id.*) FNP Lotz faxed the results of her exam and treatment to Drs. Julyan and Dryland who ultimately opined as to plaintiff's limitations a month later. (Tr. 461.) Finally, it is unclear how plaintiff appearing "well" and in "no apparent distress" contradicts Dr. Julyan's observation that plaintiff has limitations sitting, standing, and walking. Further, neither of those observations contradicts Dr. Julyan's

opinion that plaintiff could lift less than ten pounds occasionally and had a fingering limitation. Indeed, the ALJ appears to have ignored Dr. Julyan's opinion entirely regarding those two limitations.[2]

Second, the Commissioner argues the ALJ found "the record as a whole" did not support Dr. Julyan's opinion. 20 C.F.R. §§ 404.1527(c)(4), 413.927(c)(4). The Commissioner argues that "the ALJ noted Plaintiff's professed ability to walk the length of the mall, with pauses (Tr. 51) and further discussed Dr. Schwartz's indication that Plaintiff can perform at least medium work." This evidence, the Commissioner argues, "is clearly inconsistent with Dr. Julyan's check-box assessment that Plaintiff, for example, can never stand or walk." Def.'s Br. 08–09. This *post hoc* rationale was not articulated by the ALJ in his decision. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."). Although the ALJ mentions consultative examiner Dr. Schwartz by name in a subsequent paragraph discussing plaintiff's hearing testimony, that portion of the ALJ's decision pertains to adopting a limitation of "light work," not discrediting Dr. Julyan's opinion.[3]

---

[2] Plaintiff also argues the ALJ failed to address Dr. Julyan's fingering limitation. The Commissioner responds that Dr. Julyan's opinion had been properly rejected. Because the court finds Dr. Julyan's opinion was not properly rejected, the Commissioner's argument lacks merit. The court notes, however, that had the ALJ provided permissible justifications for discounting Dr. Julyan's opinion, an ALJ errs when she "without explanation" ignores medical evidence, which the ALJ did here. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

[3] Even if the court where to consider this *post hoc* argument, both the Commissioner in describing plaintiff's ability to "walk the length of the mall, with pauses" and the ALJ in describing plaintiff's ability to take "regular strolls at the mall for exercise" mischaracterize the record. *See* Def.'s Br. 08–09; (Tr. 28.). At the hearing plaintiff testified: "I try to go to the mall to walk to get exercise if I can, if I'm feeling up to it." (Tr. 46–47.) However, she provided the following additional caveat: even though "the mall here is really small" she had to stop "two, [or] three times" to make it from one end of the mall to the other. (Tr.

2. Treating Rheumatologist David Dryland M.D.

Dr. Julyan referred plaintiff to rheumatologist Dr. David Dryland in early February 2014 for an initial consultation. (Tr. 465–71.) At the initial consultation, plaintiff reported pain "all over" and "all the time" with "no real pattern." (Tr. 465.) Dr. Dryland noted plaintiff was "in pain through the exam" and endorsed on all eighteen out of eighteen fibromyalgia tender points. (Tr. 467–68.) Dr. Dryland reviewed "[o]utside records" and "discussed [them] with the [plaintiff]." (Tr. 468.) Dr. Dryland initially assessed osteoarthritis and fibromyalgia. (*Id.*) He prescribed plaintiff Trazadone and asked plaintiff to return in three to four weeks. (*Id.*)

In late February 2014, plaintiff returned for her follow-up appointment where she again complained of "pain all over" and "all the time" with "no real pattern." (Tr. 444.) Dr. Dryland observed that plaintiff was in "no acute distress," and plaintiff reported she had suffered "pain for decades." (*Id.*) Plaintiff again endorsed on all eighteen out of eighteen fibromyalgia tender points, and imaging scans revealed "mild" osteoarthritis in her spine as well as "severe" osteoarthritis in her knees. (*Id.*) He prescribed plaintiff Naprosyn and asked plaintiff to return in three months for an additional follow-up appointment. In June 2014, plaintiff again presented with many of the same symptoms regarding pain, and fibromyalgia tender points. (Tr. 539–42.) Imaging scans also revealed osteoarthritis remained "mild" in her spine and "severe" in both of plaintiff's knees. (Tr. 540.) Dr. Dryland again assessed plaintiff suffered from fibromyalgia, severe osteoarthritis in both knees, and recommended she see an orthopedic specialist to treat her knees. (Tr. 541.)

51.) The Commissioner's argument is *post hoc*, and ALJ's finding that plaintiff took "regular strolls at the mall for exercise" is unsupported by the record.

Two days later, Dr. Dryland issued his June 2014 medical opinion in the form of a residual functional capacity questionnaire. (Tr. 614–15.) In that questionnaire, Dr. Dryland noted many of the same limitations found by Dr. Julyan, including that plaintiff would need to take unscheduled breaks throughout the day; although he could not predict their frequency or duration. (*Id.*) Dr. Dryland opined that plaintiff had the following physical limitations, she: (1) could sit for a maximum one hour during an eight hour workday, and could sit for a maximum of fifteen minutes at any one time; (2) was limited to jobs that involved no standing or walking during an eight hour work day, and could stand or walk for a maximum of five minutes at any one time; (3) could never lift or carry objects in a competitive work environment; (4) required jobs which permit shifting positions at will; and (5) had limitations in repetitive reaching, handling, and fingering; however, he could not predict the percentage of time it would interfere with plaintiff during an eight hour work day. (*Id.*)

Again, although the ALJ did not explicitly state the amount of weight he gave to Dr. Dryland's opinion, as discussed above, because the ALJ limited plaintiff to light work, the ALJ rejected Dr. Dryland's opinion. Thus, the ALJ was required to provide "specific and legitimate reasons that are supported by substantial evidence" for doing so. *Bayliss*, 427 F.3d at 1216.

The Commissioner cites three reasons for discrediting Dr. Dryland's opinion. First, similarly to the ALJ's argument regarding Dr. Julyan, the Commissioner argues Dr. Dryland's opinion was inconsistent with contemporaneous treatment notes, citing *Tommasetti*, 533 F.3d at 1041. Def.'s Br. 8. The ALJ identified Dr. Dryland's treatment note that indicated plaintiff presented in "no acute distress" at her June 2014 follow-up appointment. Although plaintiff presented with "no acute distress," the ALJ's reasoning fails to explain how this contradicted Dr. Dryland's opinion. Indeed, reading the treatment note in its entirety

Page 12 - OPINION AND ORDER

reveals that Dr. Dryland's conclusions were consistent with his notes from that appointment. For example, plaintiff endorsed to all eighteen fibromyalgia trigger points, and imaging scans revealed continuing "severe" osteoarthritis in plaintiff's knees — severe enough, in fact, for Dr. Dryland to recommend plaintiff see an orthopedic specialist. (Tr. 540–41.)

The additional alleged inconsistencies identified by the ALJ and the Commissioner are not, in fact, inconsistencies. First, the Commissioner argues that Dr. Dryland opined that plaintiff had the ability to sit for five to ten minutes yet presented with "no acute distress." Def.'s Br. 5. It is unclear how a limitation on the length of time plaintiff could sit is inconsistent with her presenting with "no acute distress." This argument lacks merit. Next, the Commissioner argues Dr. Dryland opined plaintiff could stand or walk for zero to five minutes yet on examination plaintiff's gait was normal and her joints were stable. Def.'s Br. 5. That plaintiff can stand or walk for up to five minutes is not inconsistent with a normal gait and stable joints. This argument, too, lacks merit. Dr. Dryland's opinion as to plaintiff's limitations, therefore, was not inconsistent with contemporaneous treatment notes.

The Commissioner next argues because plaintiff told Dr. Dryland "she had been dealing with similar pain for decades — which presumably included her most recent period of substantial gainful activity in 2012," his opinion that plaintiff was precluded from jobs that required her to stand or walk dating back to 2012 was inconsistent with the fact that plaintiff had performed work during that year, citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692–93 (9th Cir. 2009). (Tr. 28.) In *Valentine*, the ALJ properly rejected a treating physician by identifying a contradiction in that the physician "repeatedly reported [the claimant] was unemployable while acknowledging he continued to work full time," and pointed to additional evidence in the record consistent with that contradiction — the same treating

Page 13 - OPINION AND ORDER

physician's treatment notes showing the claimant had "improved functioning at work." 574 F.3d at 692–93.

No such contradiction exists here. It is not a contradiction that plaintiff had been dealing with fibromyalgia symptoms for "decades," yet worked during the time period because her fibromyalgia symptoms were not yet disabling. Indeed, a careful review of the evidence in the medical record reveals the opposite conclusion: plaintiff's symptoms worsened over time, forcing plaintiff to stop working in October 2012. *Compare* (Tr. 304) (March 2011: assessing stable fibromyalgia among other impairments) *with* (Tr. 297) (March 2012: reporting pain to shoulder, knee, back after prolonged standing or sitting and increasing arthritis medication); *and* (Tr. 332) (September 2012: reporting "an increase in her total body pain" after losing health insurance and going off her prescribed medication); *and* (Tr. 380) (September 2012: "She's had in increase in her total body pain recently."). Moreover, in contrast to *Valentine*, the Commissioner has failed to direct the court to other additional evidence consistent with the alleged contradiction. Rather, as discussed above, the medical evidence suggests plaintiff's symptoms were worsening — not improving. This argument is unavailing.

The Commissioner next argues the ALJ found "the record as a whole" did not support Dr. Dryland's opinion. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). The Commissioner invokes the same *post hoc* rationalization she proposed to discount Dr. Julyan's opinion. Namely, that the "ALJ's decision recounted Plaintiff's allegations . . . and considered Dr. Schwartz, the examining physician." Def.'s Br. 7. As discussed above, the section of the ALJ's decision the Commissioner appears to be citing to is not the section discounting Dr. Dryland's opinion. Moreover, even assuming without finding that it were, the purported contradiction is not, in fact, contradictory. According to the Commissioner, "Plaintiff's own testimony contradicts Dr. Dryland's opinion that she can stand for 0 hours per day." Def.'s Br. 7. Dr.

Dryland did not opine that plaintiff could "stand for 0 hours per day." Rather, his opinion precluded plaintiff

from jobs requiring her to stand or walk; he also opined that plaintiff could walk up to five minutes. (Tr.

614.) Plaintiff testified that in the past she has intermittently attempted to exercise by walking from one end

of the local mall to the other. (Tr. 51.) However, she also testified she has to take frequent breaks before

arriving at the opposite end. That testimony does not contradict Dr. Dryland's opinion that plaintiff can

walk up to five minutes at any one time.

In sum, the ALJ failed to provide specific and legitimate reasons supported by substantial evidence

for rejecting the opinions Drs. Julyan and Dryland.

### B. Fibromyalgia Evaluation in the RFC.

Plaintiff assigns as error to the ALJ's analysis of her fibromyalgia in crafting her RFC. Specifically,

plaintiff contends the ALJ's focus on objective evidence is inconsistent with the nature of fibromyalgia and

constituted "a substitution of his own lay opinion for that of acceptable medical sources." Pl.'s Br. 12.

The Commissioner responds that "disability claims premised on a diagnosis of fibromyalgia effectively turn

on the ALJ's findings about the reliability of the claimant's alleged symptoms," and plaintiff failed to

challenge the ALJ's credibility finding here. Def.'s Br. 10–11. According to the Commissioner, the

"crucial distinction between" *Rollins v. Massanari*, 261 F.3d 853 (9th Cir. 2001), and *Benecke v.

Barnhart*, 379 F.3d 587 (9th Cir. 2004), is that the ALJ's adverse credibility finding of the claimant was

upheld in *Rollins*, and not upheld in *Benecke*. Therefore, argues the Commissioner, fibromyalgia cases

hinge on whether an ALJ accepts or rejects a claimant's symptom testimony. Both parties oversimplify the

analysis.

As discussed in Section I, SSR 12-2p describes the method by which the Commissioner evaluates fibromyalgia claims:

> A claimant must provide evidence from an acceptable medical source, like a licensed physician, to establish that she has fibromyalgia. [SSR 12-2p at *5.] The record must include certain medical evidence to show the claimant has fibromyalgia under either Part A or Part B of Section II of [SSR 12-2p]. *Id.*

*Helms Eddy v. Colvin*, No. 3:14-cv-01418-JE, 2016 WL 7013467, at *2 (D. Or. Nov.28, 2016).

Here, plaintiff provided such evidence and, as discussed in Section I, established fibromyalgia as a medically determinable and "severe" impairment. The ruling goes on to explain:

> If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms. As we explain in SSR 96-7p, we will make a finding about the credibility of the person's statements regarding the effects of his or her symptoms on functioning.
>
> ***
>
> Once we establish that person has a [medically determinable impairment] of [fibromyalgia], we will consider it in the sequential evaluation process to determine whether the person is disabled.

SSR 12-2p *available at* 2012 WL 3104869, at *5. In other words, when a claimant establishes fibromyalgia as a medically determinable impairment, and there is no objective medical evidence to substantiate the symptoms, SSR 12-2p directs an ALJ to evaluate the severity of the claimant's symptoms through a standard credibility determination.[4] Therefore, in one respect the Commissioner is correct:

_____

[4] The court notes that, pursuant to Social Security Ruling 16-3p ("SSR 16-3p"), the ALJ is no longer tasked with making an overarching credibility determination and instead assesses whether the

Where there is a lack of objective evidence to substantiate a claimant's fibromyalgia claim, an ALJ must rely on a credibility determination of a claimant's own statements to establish the intensity, persistence, and functional limiting effects of a claimant's fibromyalgia. Because plaintiff did not challenge the findings related to plaintiff's credibility or lay witness testimony, the ALJ's conclusions with regard to those findings must be upheld.

The analysis, however, does not end there. As Chief Judge Mosman recently explained, SSR 12-2p imposes additional obligations on ALJs in formulating a claimant's RFC and at steps four and five of the sequential evaluation:

> Some of the analysis at each step is unique for claimants with fibromyalgia. For example, in determining the RFC of a claimant with fibromyalgia, the ALJ must "consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'" [SSR 12-2p at *6.] Similarly, at steps four and five, the ALJ has to consider whether the claimant has certain exertional, nonexertional, and environmental limitations that are unique to fibromyalgia, and that erode their ability to perform past relevant work or any other work in the national economy. *Id.*

*Helms Eddy*, 2016 WL 7013467, at *2. Here, the ALJ's decision failed to explain how he "consider[ed] the] longitudinal record" in accordance with SSR 12-2p in crafting plaintiff's RFC. The ALJ also failed to explain at steps four and five how he considered plaintiff's "exertional or nonexertional limitations" in light

---

claimant's subjective symptom statements are consistent with the record as a whole. *See* SSR 16-3p, *available at* 2016 WL 1119029 (superseding SSR 96-7p). There is no binding precedent interpreting this new ruling or whether it applies retroactively. *Compare Ashlock v. Colvin*, 2016 WL 3438490, *5 n.1 (W.D. Wash. June 22, 2016) (declining to apply SSR 16-3p to an ALJ decision issued prior to the effective date), *with Lockwood v. Colvin*, 2016 WL 2622325, *3 n.1 (N.D. Ill. May 9, 2016) (applying SSR 16-3p retroactively to a 2013 ALJ decision). Because the plaintiff does not challenge ALJ's credibility determination, the court need not resolve the issue.

of plaintiff's fibromyalgia. Indeed, there is no mention of SSR 12-2p anywhere in the ALJ's decision. The ALJ's formulation of plaintiff's RFC failed to include a proper evaluation of the longitudinal record regarding her fibromyalgia, and is, therefore, not supported by substantial evidence.

III.  Step Five.

Plaintiff next assigns as error to the ALJ's step five finding. Specifically, plaintiff argues, because the ALJ erred in evaluating her impairments and determining her RFC, the hypothetical to the VE did not adequately reflect the extent of her limitations. Pl.'s Br. 13–14. The Commissioner responds that the hypothetical to the VE included only the limitations the ALJ found credible. Def.'s Br. 12. Because the court finds the ALJ failed to provide specific and legitimate rationales for discounting the opinion testimony of plaintiff's treating physicians, and because the court finds the ALJ failed to explain how he evaluated the longitudinal record in light of plaintiff's fibromyalgia, the ALJ failed to incorporate all of plaintiff's limitations into her RFC. Thus, the questions posed to the VE at step five were not based on substantial evidence. Therefore, the VE's answers are of no evidentiary value. *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) ("If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.") (internal citation omitted).

In the final substantive paragraph of her brief, plaintiff asserts she should have been found disabled pursuant to Medical-Vocational Rule 201.14. Rule 201 encompasses a table of rules that apply to claimants whose maximum sustained work capability is limited to "sedentary work." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201. Rule 201.14 directs a decision of "disabled" for a claimant who:  (1) is approaching advanced age (age 50–54); (2) has a high school education or its equivalent; and (3) has a

Page 18 - OPINION AND ORDER

skilled or semiskilled work history, with nontransferable work skills. *Id.* at § 201.14. Conversely, Rule

201.15 directs a decision of not disabled for an otherwise identical claimant with transferable work skills.

*Id.* at § 201.14. Assuming without deciding plaintiff is limited to sedentary work and the 201 tables apply,

the first two elements of the both rules are likely satisfied here. However, the ALJ made no finding as to

the transferability of plaintiff's past work skills other than noting the issue of transferability was "not material

because using the Medical-Vocational rules as a framework supports a finding of not 'disabled,' whether

or not the [plaintiff] has transferable job skills." (Tr. 30.). Plaintiff's assertion, therefore, is misplaced.

Again, assuming without deciding plaintiff is limited to sedentary work, to be found disabled under Rule

201.14, the ALJ must have also found plaintiff's skills were not transferable. *See Silveira v. Apfel*, 204

F.3d 1257, 1262 (9th Cir. 2000) ("[The claimant's] disability status turns on whether he has transferable

skills, a finding that the ALJ expressly declined to make. We remand [the claimant's] case to the ALJ for

finding as to whether [the plaintiff] has transferable skills.") (footnotes omitted); *Merritt v. Colvin*, No.

3:14-cv-5964-KLS, 2015 WL 4039355, at *8 (W.D. Wash. July 2, 2015) ("But given that the ALJ made

no finding as to the transferability of job skills . . . it is unclear whether a determination of 'disabled' under

Rule 201.14 or of 'not disabled' under Rule 201.15 . . . is more appropriate[.]"); *compare* 20 C.F.R., Pt.

404, Subpt. P, App. 2, § 201.14 *with* § 201.15.

      Accordingly, this case must be remanded.

### *Remand*

      The decision whether to remand for further proceedings or for immediate payment of benefits is

within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*,

531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of

benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135, 1138–39 (9th Cir. 2011) (quoting *Benecke*, 379 F.3d at 593). The court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id.* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. (*Id.*) The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871 876 (9th Cir. 2003) (citing *Bunnell*, 947 F.2d at 348 (*en banc*)). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

Here, plaintiff concedes the proper course is to remand for further proceedings. Pl.'s Br. 15. The court agrees. Further proceedings are required to reassess the medical evidence and allow the ALJ to accept the medical opinions of Drs. Julyan and Dryland and incorporate all the limitations described by those doctors into a new RFC or provide legally sufficient reasons for their rejection. On remand, the ALJ must evaluate plaintiff's fibromyalgia as directed by SSR 12-2p and explain how the longitudinal record regarding that impairment was considered in creating a new RFC, consider exertional, nonexertional, and environmental limitations that are unique to fibromyalgia at steps four and five, and take new testimony from

Page 20 - OPINION AND ORDER

the VE regarding plaintiff's ability to perform work that exists in the national economy.

### *Conclusion*

The Commissioner's decision is not supported by substantial evidence in the record, and it is

therefore **REVERSED and REMANDED** for further proceedings consistent with this opinion.

IT IS SO ORDERED

DATED this _4th_ day of December, 2017.

JOHN V. ACOSTA
United States Magistrate Judge